IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-6035-CR-SJ-NKL |
| | ) | |
| TERRY KEITH WENDT, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ADOPTING REPORT & RECOMMENDATION**

On May 11, 2006, John T. Maughmer, United States Magistrate Judge, recommended that this Court deny Terry Wendt's ("Wendt") Motion to Suppress. *See* Report & Recommendation [Doc. # 39]; Wendt's Motion to Suppress [Doc. # 23]  The parties were advised that they could file written objections to the recommendation and Wendt filed his objections on May 19, 2006. [Doc. # 40]  After a *de novo* review of the record, the Court is convinced that the recommendation of the Magistrate is correct and should be adopted.

**I.      Factual Background**

Wendt was convicted in 2000 for being a felon in possession of a firearm and he was on probation for that offense during the relevant time period.  On August 30, 2005, Wendt's probation officer, Chris Buckman ("Buckman"), contacted Greg Coon ("Coon"), who is an officer with a joint law enforcement effort known as the NITRO Task Force.

1

Buckman advised Coon that he had received information from a confidential informant ("CI") that Wendt was living at 1005 Grant Street in Princeton, Missouri. The CI told Buckman that Wendt was driving a brown Ford Taurus with Iowa license plates and that Wendt did not have a valid driver's license. The CI also told Buckman that Wendt frequented a bar in Princeton called the Crossroads Bar and Grill and that Wendt frequently drank alcohol there. The CI stated that Wendt associated with a woman whose last name was McKnight. The CI told Buckman that Wendt had firearms at his residence and that the CI had observed the firearms within the previous thirty days. Buckman passed this information along to Coon.

On September 20, 2005, officers conducted surveillance of Wendt and observed him driving a brown Ford Taurus with Iowa license plates. Officers saw Wendt at the Crossroads Bar and Grill and he appeared to be drinking an alcoholic beverage. After leaving the bar, Wendt traveled to the home of Cynthia McKnight ("McKnight") in Princeton and he entered the home.

On September 22, 2005, officers conducted surveillance of Wendt at 1005 Grant Street in Princeton, Missouri. It appeared that Wendt lived there as he was working on a vehicle in front of the house. Wendt's brown Ford Taurus was parked at the home.

Via state records, officers independently verified that Wendt did not have a valid driver's license and that the brown Ford Taurus was registered to Wendt.

On October 12, 2005, Coon was contacted by the Mercer County Sheriff's Office ("Mercer County"). The same CI had contacted Mercer County and stated that Wendt

had informed the CI that he had a .22 caliber rifle located in his bedroom in Princeton. Mercer County passed along this information to Coon.

On October 13, 2005, Coon contacted the CI directly and obtained similar information. The CI told Coon that Wendt had stated he had a .22 caliber rifle in his bedroom. According to the CI, the conversation occurred two weeks earlier. The CI had not actually seen the firearm for approximately two months.

On October 13, 2005, NITRO officers saw Wendt driving the Ford Taurus on Highway 65 in Grundy County, Missouri. The officers contacted the Missouri Highway Patrol ("MHP") and advised them that Wendt was operating a vehicle without a valid driver's license. The MHP stopped Wendt's vehicle.

Wendt had a passenger in the vehicle named Kendall Shriver ("Shriver"). Wendt immediately was placed under arrest for driving without a license. When officers asked if Wendt would consent to a search of his residence, he declined because what was in his room "would cost him a lot of years." It is unclear whether members of the MHP advised Wendt of his *Miranda* rights, but none of the NITRO officers did.

Shriver lived at the same residence as Wendt; he advised officers that he owned the home and that Wendt rented a room from him and they shared a common area. Shriver consented to a search of his portion of the home and the common area. Officers transported Shriver to the home in Princeton. Officers accompanied Shriver so they could secure the home while they obtained a search warrant for Wendt's bedroom.

One of the officers who accompanied Shriver was Casey Ballantyne

3

("Ballantyne"). Upon arriving at Shriver's home, Ballantyne testified that he performed a safety sweep of the residence to ensure no other people were there. Shriver told Ballantyne there were two bedrooms. The door to Wendt's bedroom was unlocked and the door to Shriver's bedroom was locked. Ballantyne opened the door to Wendt's room and turned on the light wherein he observed a "long gun" leaning against the wall; he was not sure whether it was a BB gun or a firearm. After he determined that no one was in the bedroom, Ballantyne returned to the common area of the house with the other officers. Shriver's bedroom was locked and Ballantyne did not attempt to open that door.

While Ballantyne and the other officers accompanied Shriver to the residence, Coon and Billy Lee Wright ("Wright") accompanied Wendt to the Trenton city jail. They advised Wendt of his *Miranda* rights and asked him again if he would consent to a search of his bedroom. Wendt declined. Ballantyne called Wright and told him about what he observed in Wendt's bedroom, specifically the gun leaning against the wall. Hearing only Wright's end of the conversation, Wendt stated that he knew what a protective sweep was and that it would cost him thirty years. Wendt eventually invoked his right to counsel.

Coon and Wright then drafted an Affidavit to submit in support of an application for a search warrant. The application and Affidavit are attached as Exhibit 2 to the Government's Opposition to Wendt's Motion [Doc. # 25]. Coon served as the affiant and he outlined the information officers received from the CI about Wendt and his habits. He also outlined that the CI's information had been corroborated through independent

4

surveillance and investigation. The Affidavit listed Wendt's previous convictions, including his 2000 conviction for being a felon in possession of a firearm. Coon also included the CI's information related specifically to the firearm. Ballantyne's report about a firearm leaning against the wall of Wendt's bedroom was also included in Coon's Affidavit. Coon obtained a search warrant and then executed the warrant on Wendt's bedroom. Officers recovered a .22 caliber rifle and .22 caliber ammunition from the bedroom.

On November 1, 2005, Wendt was charged in a one-count indictment with being a felon in possession of a firearm. [Doc. # 13] Wendt subsequently filed his Motion to Suppress. The Report and Recommendation finds that the search warrant was supported by probable cause, even without considering the portion of the Affidavit that related to Ballantyne's observation of the firearm in Wendt's bedroom. After a *de novo* review of the record, this Court agrees and adopts the Report and Recommendation.

**II.     Discussion**

A search warrant is supported by probable cause if "given all the circumstances set forth in the affidavit . . . there is a fair probability" that evidence of a crime will be discovered. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Information from a confidential informant may be sufficient to establish probable cause if it 'is corroborated by independent evidence' or if the informant 'has a track record of supplying reliable information.'" *United States v. Littrell*, 439 F.3d 875, 881 (8th Cir. 2006) (citations omitted). If unlawfully obtained information is submitted in support of a search warrant,

then the warrant is evaluated without considering that information to see if it is supported by probable cause. *United States v. Hernandez Leon*, 379 F.3d 1024, 1027 (8th Cir. 2004) (citing *United States v. Templeman*, 938 F.2d 122, 124-25 (8th Cir. 1991)).

Even assuming that Ballantyne's safety sweep of the residence was unlawful and that the information about the gun in Wendt's bedroom was wrongfully included in Coon's Affidavit, the warrant is still supported by probable cause. The CI provided specific information about Wendt's vehicle, his residence, locations he frequented in Princeton, the status of his driver's license, and individuals with which he associated. All of these facts were independently corroborated by the officers through surveillance and a check of the public records. Although Coon's Affidavit did not recount whether the CI had a reliable track record, the independent corroboration of these details was sufficient to establish probable cause. *See United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001) ("Even 'the corroboration of minor, innocent details can suffice to establish probable cause.'") (quoting *United States v. Ramos*, 818 F.2d 1392, 1397 n. 7 (8th Cir. 1987)).

This is particularly true where the CI stated that Wendt personally told the CI about the firearm and the CI knew some details about Wendt that were not reasonably available to the public at large. For example, the CI knew that Wendt's driver's license had been revoked, which most people would not know absent some sort of relationship with the target of the warrant.

Additionally, the CI's information about the firearm was not stale given that the CI had seen the firearm at Wendt's residence within a few months of October 2005. *See*

6

*United States v. Maxim*, 55 F.3d 394, 397 (8th Cir. 1995) (holding that information four months old may supply probable cause for a warrant to search for illegal firearms due to the continuing nature of the possession offense).

Wendt's previous conviction for being a felon in possession of a firearm also supported the sufficiency of the warrant because it reflected his propensity for having a firearm in his possession. *See United States v. Vinson*, 414 F.3d 924, 930 (8th Cir. 2005) (noting that defendant's prior conviction for drug offenses was a relevant factor in evaluating sufficiency of search warrant in drug case).

Wendt cites *United States v. Duchi*, 906 F.2d 1278 (8th Cir. 1990) in support of his Motion. That case is distinguishable, though, because it concerned whether exigent circumstances existed for officers to enter the defendant's home and search it. The officers did not obtain a search warrant and the court held that exigent circumstances did not exist. In the instant case, the officers obtained a search warrant and the Court finds the warrant was supported by probable cause.

Even assuming the warrant was not supported by probable cause, the search would nonetheless be valid because the officers acted in good faith. Where a warrant lacks the requisite probable cause, evidence seized pursuant to the warrant will not be excluded "as long as the executing officers relied in objectively reasonable good faith upon the warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984); *Vinson*, 414 F.3d at 930. The good faith reliance rule applies unless the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at

7

923. In the event the warrant were held to be invalid, there is no basis for finding that it was so deficient so as to put the officers on notice that it was constitutionally invalid.

In his Objections, Wendt suggests that his statement to the officers that whatever was located in his room would "cost him a lot of years" should be suppressed. This statement was not the subject of Wendt's original Motion to Suppress nor is it addressed in the Magistrate's Report and Recommendation. The Court makes no finding about whether Wendt's pre-*Miranda* statement is admissible. The Court also makes no finding about whether Ballantyne's safety sweep of the residence was justified.

### III. Conclusion

Accordingly, it is hereby

ORDERED that the Magistrate's Report and Recommendation [Doc. # 39] is ADOPTED and Wendt's Motion to Suppress [Doc. # 23] is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

DATE: May 23, 2006
Jefferson City, Missouri